# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

———————————————————————

JAMES ILAR and KRISTI ILAR,
individuals and citizens of Tennessee,
Plaintiffs,

v.

WELLS FARGO BANK, N.A.,
a citizen of South Dakota;
U.S. BANK, N.A.,
as Trustee for RASC Series 2005 EMX4 Trust,
a citizen of Ohio;
MORTGAGE LENDERS NETWORK USA, INC.,
a citizen of Delaware;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
a citizen of Virginia;
Defendants.

———————————————————————

# AFFIDAVIT
# OF FORENSIC LOAN AUDIT

———————————————————————

Teri L. Petit
Certified Forensic Loan Auditor
Property Rights Law Group
161 North Clark Street
Suite 4700
Chicago, Illinois 60601
Tel:     312-523-2109
Fax:     773-256-1288
tpetit@propertyrightslawgrp.com

Dated: April 20, 2012

# DISCLAIMER

I, Teri L. Petit, am a mortgage-fraud and forensic analyst and a Certified Forensic Loan Auditor, not an attorney. In 2001, I was licensed as a mortgage broker by the State of Illinois. In 2004, I was licensed as a mortgage broker by the State of Florida. In 2008, I passed the General Securities Representative Examination and was licensed as a Series-7 Securities Broker. In 2009, I was licensed as a Series-66 Financial Advisor. In 2011, I was certified as a Forensic Loan Auditor.

The purpose of this Affidavit of Forensic Loan Audit is to assist the trier of fact in understanding the significance of the documentary evidence that has been presented by the Plaintiffs, and to promote the public's interest.

Statements of fact, findings, or opinions expressed herein are based strictly on the documentary evidence, not on the law, and are not to be interpreted as legal conclusions, which is the exclusive domain of the courts.

To assist this Court in comprehending the arcane subject of securitization and to pinpoint instances of fraud, mistake, and irregularities in the Defendants' conduct as these became known through my forensic examination of the evidence, I communicate my finding in clear, concise language accepted and easily understood by the general public for its plain meaning, or as specifically defined in Black's Law Dictionary.

Respectfully,

Teri L. Petit

# TABLE OF CONTENTS

DISCLAIMER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  SUMMARY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  STATEMENT OF CREDENTIALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. DOCUMENTARY EVIDENCE IN THIS CASE . . . . . . . . . . . . . . . . . . 7-15

EXHIBIT "A": The Mortgage, July 21, 2005.

EXHIBIT "B": 424(b)(5) Registration Prospectus for "RASC Series 2005 EMX4 Trust," filed January 6, 2005.

EXHIBIT "C": Form 15-15D of "RASC Series 2005 EMX4 Trust," executed January 20, 2006.

EXHIBIT "D": Final 10-K Annual Report of "RASC Series 2005 EMX4 Trust" executed March 20, 2006.

EXHIBIT "E": List of all filings on behalf of "RASC Series 2005 EMX4 Trust," published by the SEC.

EXHIBIT "F": Payment History sent to the Mortgagors by Wells Fargo.

EXHIBIT "G": Purported "Loan Modification Agreement," recorded September 25, 2008.

EXHIBIT "H": Correspondence from Wells Fargo's foreclosure counsel to the Mortgagors, dated March 12, 2009.

EXHIBIT "I": Purported "Appointment of Successor Trustee," recorded April 3, 2009.

EXHIBIT "J": List of Attendees, "MBA's Document Management & Custody Conference 2008."

EXHIBIT "K": Purported "Assignment of Deed of Trust," recorded July 11, 2011.

EXHIBIT "L": Complaint against MERS, filed by State of Delaware, October 27, 2011.

EXHIBIT "M": Complaint against Wells Fargo, *et al.*,
filed by Commonwealth of Massachusetts on December 1,
2011.

EXHIBIT "N" Complaint against MERS, et al, filed by
the State of New York on February 3, 2012.

EXHIBIT "O": Memorandum of Review," Office of Inspector
General, U.S. Department of Housing and Urban Development,
issued March 12, 2012.

EXHIBIT "P": Consent Judgment between Wells Fargo,
the United States, and 49 state attorneys general, entered
April 4, 2012.

EXHIBIT "Q": Title abstract summary for the Subject Property.

IV. EXPLANATION OF DOCUMENTARY EVIDENCE
  IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-26

## <u>TABLE OF AUTHORITIES</u>

Statutes:

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* . . . . . . . 18

Cases:

<u>In re Lake Region Operating Corp</u>. 209 B.R. 637, 639
(Bankr. M.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

<u>Byers v. Sheets</u>, 643 F. Supp. 695, 697 (W.D. Mo. 1986) . . . . . . . . . . . 16

<u>First Nat'l Fidelity Corp. v. Perry</u>, 945 F.2d 61, 65
(3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

STATE OF ILLINOIS    )
                     ) ss.
COUNTY OF COOK       )

## AFFIDAVIT OF TERI L. PETIT

TERI L. PETIT, being duly sworn on oath, deposes and states as follows

## I. SUMMARY OF THE CASE

On July 21, 2005, the Mortgagors signed the Note and the Mortgage to Mortgage Lenders Network. On November 1, 2005, Mortgage Lenders Network sold and transferred the Note and the Mortgage to "RASC Series 2005 EMX4 Trust" ("Trust 2005-EMX4"), a mortgage-backed-securities trust, reserving only the servicing rights to Mortgage Lenders Network. On March 24, 2006, Trust 2005-EMX4 was terminated, and all of Mortgage Lenders Network's rights and interests in the Note and the Mortgage terminated along with the Trust. Trust 2005-EMX4 never sold the Note or the Mortgage to any other party. After Trust 2005-EMX4 was terminated, Wells Fargo, without any servicing rights and without privity of contract with the mortgagees, wrongfully sent bills to the Mortgagors, pretending to have authority to collect payments. The Mortgagors have paid many of these wrongful bills. After the Mortgagors ceased paying the wrongful bills, Wells Fargo brought wrongful foreclosure proceedings against the Mortgagors, ostensibly in the name of U.S. Bank "as Trustee" for the terminated Trust 2005-EMX4. Wells Fargo is attempting to reap where it has not sown.

## II. <u>STATEMENT OF CREDENTIALS</u>

1.     I am over twenty-one years of age, I have full personal knowledge of the facts contained herein, and I am competent to testify thereto under the law of the State of Tennessee.

2.     I prepared this affidavit in preparation for anticipated litigation involving the following transactions in the above-captioned case, and I am prepared to testify hereto, under oath and penalty of perjury in any court.

3.     In 2001, I was licensed as a mortgage broker by the State of Illinois.  In 2004, I was licensed as a mortgage broker by the State of Florida. In 2008, I passed the General Securities Representative Examination and was licensed as a Series-7 Securities Broker.  In 2009, I was licensed as a Series-66 Financial Advisor.  In 2011, I was certified Forensic Loan Auditor.

4.     I have no interest in the property located at 105 Dansworth Lane, Oak Ridge, Tennessee 37830 ("the Subject Property") and no connection, financial or otherwise, with any of the parties to this case, other than my professional fee for preparing and presenting this testimony.

5.     On April 20, 2012, I personally investigated the Mortgage documents of James Ilar and Kristi Ilar, ("the Mortgagors"), husband and wife, with regard to the Subject Property.  I personally prepared and attached these exhibits, and I hereby verify that all of the documents cited in this affidavit are true and correct copies made by me of the original documents in the public records.

III.   <u>DOCUMENTARY EVIDENCE IN THIS CASE</u>

6.     I have found the following facts:

- A.     On July 21, 2005, Mortgagors James Ilar and Kristi Ilar signed a mortgage note ("the Note"), in favor of Mortgage Lenders Network USA, Inc., ("Mortgage Lenders Network"), the original mortgagee.  On the same day, to secure this loan, the Mortgagors signed the Mortgage that conveyed a security interest in the Subject Property to Mortgage Lenders Network as lender.  (A complete, true, and correct copy of the Mortgage as it was recorded on August 12, 2005, is attached hereto as Exhibit "A.")

- B.     On November 1, 2005, Mortgage Lenders Network sold and transferred the Note and the Mortgage to "RASC Series 2005 EMX4 Trust" ("Trust 2005-EMX4"), a mortgage-backed-securities trust settled under the law of the State of New York and registered with the Securities and Exchange Commission ("the SEC"), with only servicing rights under the Trust reserved to Mortgage Lenders Network.  The SEC publishes Trust 2005-EMX4's founding agreement, its Rule 424(b)(5) Registration Prospectus, at http://www.sec.gov/Archives/ edgar/data/932858/000095011705004305/a40809.txt.   The 424(b)(5) Registration Prospectus identifies the Servicer (Mortgage Lenders Network); the date (November 1, 2005) the Note and the Mortgage were transferred to Trust 2005-EMX4; and the Trustee, U.S. Bank,

N.A., ("U.S. Bank").  (The Prospectus is quite voluminous and is publicly available.  A complete, true, and correct copy, made by affiant, of the first three pages of the Registration Prospectus, with the name of the Servicer, the Trustee and the date the Note and the Mortgage were sold and transferred to Trust 2005-EMX4 highlighted by affiant in yellow on page S-4 is attached hereto as Exhibit "B.")

- C.     On January 23, 2006, Trust 2005-EMX4 filed its Form 15-15D,  "Notice and Certification of Termination," with the SEC.  Trust 2005-EMX4's "Certification and Notice of Termination" is published by the SEC at http://www.sec.gov/Archives/edgar/data/1344403/00013444 0306000002/emx4.txt.  (And a complete, true, and correct copy, made by affiant, thereof is attached hereto as Exhibit "C.")

- D.     On March 24, 2006, Trust 2005-EMX4 filed its final 10-K Annual Report.  The final Form 10-K states that, on this date, the Trust had no business, no public trading market, no selected financial date, no disclosures, no financial statements and supplementary data, no directors and executive officers, no relationships and related transactions, and no accountant services.  (See Form 10-K, pp. 2-4.) Therefore, upon information and belief, Trust 2005-EMX4 was dissolved on that date.  The SEC publishes the Trust's final 10-K Annual Report at http://www.sec.gov/Archives/edgar/data/1344403/0001344403 06000003/emx4.txt.  (A complete, true, and correct copy, made by

affiant, of the final Annual Report is attached hereto as Exhibit "D.")

- E.   A list of all filings made by Trust 2005-EMX4, as of the date of this affidavit, is published by the SEC at http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001344403&owner=exclude&count=40.  This list verifies that Trust 2005-EMX4 was terminated on March 24, 2006.  When the Trust was terminated, under the law of the State of New York, all of the assets of Trust 2005-EMX4 were distributed to the certificateholders of the Trust, and they became the only mortgagees, the only owners and legal holders of the Note and the Mortgage.  (And a complete, true, and correct copy, made by affiant, of the Security Exchange Commission's list of all filings by the Trust is attached hereto as Exhibit "E.")

- F.   From on or about March 1, 2007, Wells Fargo, by and through its division, "America's Servicing Company"---without having any interest in the Note or the Mortgage and without any privity of contract with the mortgagee---has falsely held itself out to the Mortgagors as Servicer of the Note, and without authority sent purported mortgage bills to the Mortgagors each month.  The Mortgagors, relying on Wells Fargo's false representations, paid many of these wrongful mortgage bills.  There is no evidence that Wells Fargo ever purchased the Note or the Mortgage from Trust 2005-EMX4, and no evidence that Wells Fargo ever acquired servicing rights to the Note or the Mortgage

after Trust 2005-EMX4 was terminated. (A complete, true, and correct copy, made by affiant, of a Payment History sent to the Mortgagors by Wells Fargo, by and through its ASC division, reflecting all payments made by the Mortgagors to Wells Fargo and/or its divisions and/or subsidiaries from November, 2007, through December, 2011, is attached hereto as Exhibit "F.")

- G. On September 25, 2008, Wells Fargo, by and through its ASC division, recorded a purported "Loan Modification Agreement" ("Loan Modification") on the Subject Property after inducing the Mortgagors into signing it. The purported "Loan Modification" attempted to identify "ASC, d/b/a for WFB N.A." as "Lender." However, there is no evidence that Wells Fargo or its ASC division was the "Lender" under the Note and the Mortgage at the time the purported "Loan Modification" was recorded. In fact, Wells Fargo and its ASC division are not named in any of the documents recorded on the Subject Property at the time of the purported "Loan Modification." (A complete, true, and correct copy, made by affiant, of the purported "Loan Modification" as it was recorded is attached hereto as Exhibit "G.")

- H. On March 12, 2009, Wells Fargo's foreclosure counsel informed the Mortgagors that Wells Fargo, by and through its ASC division, had retained counsel to "initiate foreclosure proceedings" on

the Subject Property. Since March of 2009, Wells Fargo has continually attempted to foreclose against the Mortgagors on the Subject Property. Wells Fargo's efforts to foreclose still continue to the present date. (A complete, true, and correct copy, made by affiant, of the correspondence sent by Wells Fargo's foreclosure counsel on March 12, 2009, is attached hereto as Exhibit "H.")

- I. On April 3, 2009, a purported "Appointment of Successor Trustee" ("Appointment") was recorded on the Subject Property, which attempted to replace the original Trustee of the Mortgage, Robert M. Wilson, with a successor Trustee and Co-Trustee. The purported "Appointment" was supposedly executed by U.S. Bank "as Trustee," with Karan Abernethy signing in her alleged capacity as "Assistant Secretary" of U.S. Bank. (A complete, true, and correct copy, made by affiant, of the purported "Appointment" as it was recorded is attached hereto as Exhibit "I.")

- J. In fact, Ms. Abernethy was never an "Assistant Secretary" of U.S. Bank, nor was she ever an officer or an authorized signer of U.S. Bank. U.S. Bank has never recorded any power of attorney for Ms. Abernethy with the Anderson County Register of Deeds. At the time of signing, Ms. Abernethy was an employee of Wells Fargo. Publicly-available documents confirm her status as an employee of Wells Fargo; in 2008, Ms. Abernethy was listed as an

attendee of a conference which listed her job title as "Assistant Vice President" of Wells Fargo Home Mortgage. (A complete, true, and correct copy, made by affiant, of the conference attendee list is attached hereto as Exhibit "J.")

- K. On December 12, 2011, Wells Fargo executed a purported "Assignment of Mortgage" ("Assignment"), which it recorded on the Subject Property on December 19, 2011. Wells Fargo's purported "Assignment" attempted to assign the Mortgage from MERS "as nominee" for Mortgage Lenders Network, to U.S. Bank "as Trustee" for the terminated Trust 2005-EMX4. Evyette Tidwell executed Wells Fargo's purported "Assignment" in her alleged capacity as "Assistant Secretary" of MERS. (A complete, true, and correct copy, made by affiant, of the purported "Assignment" as it was recorded is attached hereto as Exhibit "K.")

- L. In fact, Ms. Tidwell was never "Assistant Secretary" or even an officer of MERS, and MERS has never recorded any power of attorney for Ms. Tidwell with the Anderson County Register of Deeds. On information and belief, at the time of signing, Ms. Tidwell was an employee and/or agent of Wells Fargo. Additionally, there is no evidence that Wells Fargo or Ms. Tidwell ever notified MERS of their attempted assignment of MERS' alleged interest.

- M. On October 27, 2011, the State of Delaware sued MERS

for deceptive and abusive mortgage and foreclosure practices. Among Delaware's allegations was the assertion that MERS operates essentially "like a puppet whose strings are pulled" by foreclosing banks, who systematically use MERS to defraud courts and mortgagors by recording purported "assignments" in MERS's name without proper legal authority. (A complete, true, and correct copy, made by affiant, of Delaware's Complaint is attached hereto as Exhibit "L.")

- N.  On December 1, 2011, the Commonwealth of Massachusetts sued Wells Fargo and other banks, alleging that Wells Fargo, as it is doing in the instant case, systematically defrauds courts, mortgagors, and mortgagees by foreclosing on mortgages that it does not own. (A complete, true, and correct copy of the Complaint in that case is attached hereto as Exhibit "M.")

- O.  On February 3, 2012, the State of New York sued MERS and several major financial institutions for widespread improprieties in prosecuting foreclosures. New York alleged that foreclosing institutions regularly direct their own employees to execute "assignments" on behalf of MERS, supposedly as "certifying officers" of MERS. While MERS has seemingly designated many bank-employed foreclosure processing workers as "certifying officers" of MERS, New York's complaint, like Delaware's, alleges that this purported authority is legally insufficient. The supposed "certifying officers" are solely

employees of the foreclosing banks, not MERS. The supposed "certi-fying officers" have no accountability to MERS, and there is no evidence to suggest MERS oversees any of the work performed by the "certifying officers." This practice, New York concludes, raises serious doubts regarding the legality of "assignments" executed in the name of MERS. (A complete, true, and correct copy, made by affiant, of New York's Complaint is attached hereto as Exhibit "N.")

- P. On March 12, 2012, the Office of Inspector General of the Department of Housing and Urban Development issued a detailed "Memorandum of Review" of Wells Fargo's foreclosure practices. The Memorandum concluded that Wells Fargo "failed to establish proper policies and procedures that fostered compliance with laws and regulations." Wells Fargo's affiants often "robosigned foreclosure documents" without performing a due diligence review or verification of the facts. Additionally, Wells Fargo "[filed] improper legal documents." (A complete, true, and correct copy, made by affiant, of the Memorandum is attached hereto as Exhibit "O.")

- Q. On April 4, 2012, Wells Fargo entered into a consent judgment with the Justice Department, the Department of Housing and Urban Development, and 49 state attorneys general wherein Wells Fargo agreed to pay $1,005,233,716 in fines and $1,489,813,925 in payments to foreclosed borrowers in response to Wells Fargo's wide-

spread, fraudulent, and abusive foreclosure practices. (The Consent Judgment is quite voluminous and is publicly available. A complete, true, and correct copy, made by affiant, of the first seven pages of the consent judgment is attached hereto as Exhibit "P.")

- R. There is no recorded or other evidence that Trust 2005-EMX4 ever sold the Note or the Mortgage to any other entity, including but not limited to Mortgage Lenders Network, Wells Fargo, or U.S. Bank. An abstract of title for the Subject Property is published by the Anderson County Register of Deeds at http://search.anderson deeds.com/menu.php. (A complete, true and correct copy of the relevant abstract of title is attached hereto as Exhibit "Q.")

## IV. EXPLANATION OF THE DOCUMENTARY EVIDENCE IN THIS CASE

7.      On July 21, 2005, the Mortgagors signed the Note and granted the Mortgage to Mortgage Lenders Network, the original mortgagee.  (See Exhibit "A," the Mortgage.)

8.      On November 1, 2005, pursuant to its established business practice, Mortgage Lenders Network sold and transferred the Note and the Mortgage to Trust 2005-EMX4.  Under Trust 2005-EMX4, Mortgage Lenders Network was named Servicer of the Note and the Mortgage, and U.S. Bank was named Trustee.  On that date, Mortgage Lenders Network lost all ownership interest in the Note and the Mortgage.  (See Exhibit "B," the Trust's Registration Prospectus.)

9.      On January 23, 2006, Trust 2005-EMX4 filed its Form 15-15D ("Notice and Certification of Termination") with the SEC.  On March 24, 2006, the Trust filed its final Form 10-K Annual Report, and on information and belief was terminated and dissolved.  On that date, under the law of the State of New York, all of the assets of Trust 2005-EMX4 were distributed to its certificateholders, which became the only mortgagees, the only lenders, and the only owners of the Note and the Mortgage.  Byers v. Sheets, 643 F. Supp. 695, 697 (W.D. Mo. 1986).  (See Exhibit "C," Trust 2005-EMX4's Certification and Notice of Termination; Exhibit "D," Trust 2005-EMX4's final 10-K Annual Report; and Exhibit "E," a list of all filings on behalf of Trust 2005-EMX4.)

10.     From March 24, 2006, forward, the servicer (Mortgage Lenders Network), the trustee (U.S. Bank) and any subsidiaries, parents, or successors, or assigns of either entity lost authority to act under Trust 2005-EMX4, and under Note and the Mortgage.  This would include acts such as collecting mortgage payments, assigning Notes or Mortgages, and deciding to foreclose. In Re Lake Region Operating Corp. 209 B.R. 637, 639 (Bankr. M.D. Pa. 1997). Furthermore, U.S. Bank could not operate as Trustee for the certificateholders absent a new trust agreement.  On information and belief, no such agreement exists.  (See Exhibit "C," Trust 2005-EMX4's Certification and Notice of Termination; Exhibit "D," Trust 2005-EMX4's final 10-K Annual Report; and Exhibit "E," a list of all filings on behalf of Trust 2005-EMX4.)

11.     The abstract of title in this matter reflects that there is no evidence that Trust 2005-EMX4 ever sold the Note or the Mortgage to another party, including but not limited to Mortgage Lenders Network, Wells Fargo, or U.S. Bank.  (See Exhibit "Q," the relevant title abstract.)

12.     From on or about March 1, 2007, Wells Fargo, by and through its ASC division, without any rights or interests in the Note or the Mortgage and without any privity of contract with the mortgagees, held itself out as the servicer of the Note and sent the Mortgagors false monthly statements.  The Mortgagors, relying on Wells Fargo's false representations, paid many of the fraudulent purported mortgage bills.  (See Exhibit "F," a copy of a Payment

History sent to the Mortgagors by Wells Fargo.)

13.     In my professional opinion, by paying the purported mortgage bills sent by Wells Fargo, the Mortgagors relied to their detriment upon Wells Fargo's false representations.  All of the bills sent to the Mortgagors by Wells Fargo are fraudulent.  Therefore, the Mortgagors have a cause of action for unjust enrichment and for restitution of all sums paid by the Mortgagors to Wells Fargo, as well as a cause of action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, ("FDCPA").

14.     All mortgagors have a duty to make sure that their payments under any promissory note are made to the correct party.  Otherwise, the mortgagors would not receive credit for those payments.  <u>First National Fidelity Corp. v. Perry</u>, 945 F.2d 61, 65 (3rd Cir. 1991).

15.     In my professional opinion, if the Mortgagors were to pay Wells Fargo the full amount due under the Note, Wells Fargo would have no authority to release the Mortgage.  It never purchased the Note or the Mortgage, it has no servicing rights to the Note, and it has no privity of contract with the true mortgagees, which it has not notified of its actions and to whom it has not forwarded the proceeds.

16.     Wells Fargo has gone beyond wrongfully collecting payments under the Note and Mortgage.  Since March of 2009, Wells Fargo has continued to attempt to seize the Subject Property through foreclosure.  To advance its wrongful foreclosure efforts, Wells Fargo recorded false, fraudulent

documents on the Subject Property. First, Wells Fargo recorded its purported "Appointment" on April 3, 2009. Then, on July 11, 2011, Wells Fargo recorded its purported "Assignment" on the Subject Property, attempting to assign the Note and the Mortgage to U.S. Bank from MERS. (See Exhibit "H," the correspondence from Wells Fargo's foreclosure counsel, Exhibit "I," the purported "Appointment," and Exhibit "K," the purported "Assignment.")

17. The purported "Appointment," supposedly from U.S. Bank "as Trustee," is fraudulent, defective, and as a result, conveys nothing. It is not from U.S. Bank at all---it is from Wells Fargo. Karan Abernethy, claiming to sign as "Assistant Secretary" of U.S. Bank, never held any such title. At the time of signing, Ms. Abernethy was an employee of Wells Fargo. Wells Fargo executed and recorded the purported "Appointment" ostensibly in the name of U.S. Bank, simply using U.S. Bank as a "straw man" "mortgagee" for the purposes of Wells Fargo's foreclosure. (See Exhibit "I," the purported "Appointment," and Exhibit "J," the conference attendee list.)

18. Furthermore, even assuming, contrary to fact, that Ms. Abernethy did sign with valid authority on behalf of U.S. Bank, U.S. Bank had no interest whatsoever in the Note or the Mortgage which would allow it to appoint a new Trustee of the Mortgage. Any and all rights and interests U.S. Bank had in the Note and the Mortgage "as Trustee" were terminated along with Trust 2005-EMX4 on March 24, 2006. The purported "Appointment" was executed and recorded over three years after that date. Clearly, U.S. Bank had no

authority to appoint a new Trustee of the Mortgage.  (See Exhibit "I," the purported "Appointment," Exhibit "C," Trust 2005-EMX4's Certification and Notice of Termination; Exhibit "D," Trust 2005-EMX4's final 10-K Annual Report; and Exhibit "E," a list of all filings on behalf of Trust 2005-EMX4.)

19.    There are at least three fatal defects with Wells Fargo's purported "Assignment," supposedly from MERS, which Wells Fargo executed and recorded.  The first fatal defect is that it is not really from MERS at all. It is really from Evyette Tidwell, an employee and/or agent of Wells Fargo, who was never "Assistant Secretary" of MERS as she claims to be.  Ms. Tidwell was never an officer of MERS and lacks MERS signing authority.  In other words, the purported "Assignment" is forged.  It is Wells Fargo's attempt to assign the Note and the Mortgage to its straw-man "mortgagee," U.S. Bank "as Trustee" for the terminated Trust 2005-EMX4, for the purposes of Wells Fargo's wrongful foreclosure.  (See Exhibit "K," the purported "Assignment.")

20.    The second fatal defect in Wells Fargo's purported "Assignment" is that MERS cannot assign the Note or the Mortgage.  Even assuming, contrary to fact, that MERS did retain some assignable interest in the Note or the Mortgage, a nominee is not a full agent and cannot assign its principal's interest.  Only the mortgagee itself can assign, transfer, or convey its interest in the Note and the Mortgage.  There is no language in the Mortgage granting MERS any authority to convey or assign the Note or the Mortgage on

behalf of Mortgage Lenders Network. Therefore, Wells Fargo's purported "Assignment" is void because MERS had no authority "as nominee" to assign either the Note or the Mortgage. (See Exhibit "K," the purported "Assignment.")

21. The third fatal defect of Wells Fargo's purported "Assignment" is that, even if it had conveyed the Mortgage, it certainly cannot convey the Note. A Note can only be conveyed by means of an endorsement on the Note itself. It is well-settled law in all fifty States, under the Uniform Commercial Code, that mortgage Notes are negotiable instruments, and that all negotiable instruments must be transferred only by endorsement on the instrument, never by separate contract or agreement, and never in a separate document. Therefore, Wells Fargo's purported "Assignment" does not convey the Note. If an attempted transfer of the Note fails, than the attempt to transfer the Mortgage would also fail. A Mortgage exists only to secure the mortgagee's interest in the Note – the underlying debt. This is the essence of the ancient common law principle that the "Mortgage follows the Note." (See Uniform Commercial Code, Article III, and Exhibit "K," the purported "Assignment.")

22. Wells Fargo's deceptive use of MERS is just one example of an epidemic of fraudulent, self-serving "assignments" executed and recorded by foreclosing entities. Increasingly, financial institutions have come under fire from state attorneys general by relying on MERS's supposed "nominee"

status to foreclose on mortgage loans without authority. Foreclosing "lenders" often use MERS "like a puppet" to generate purported "assignments" of mortgages, supposedly from MERS "as nominee." However, the persons executing and recording the "assignments" are typically employees and/or agents of the foreclosing "lender," not MERS. The signors often claim to be "officers" of MERS, but have no accountability to MERS, which does not oversee the signors' activities and is not even notified of it. (See Exhibit "L," the Complaint against MERS filed by the State of Delaware.)

23. In this case, in my professional opinion, Wells Fargo is consciously and fraudulently prosecuting its wrongful foreclosure. Wells Fargo is attempting to defraud the Mortgagors and the true mortgagees (the certifi cateholders of Trust 2005-EMX4) to obtain the Subject Property by theft by false pretext–using U.S. Bank "as Trustee" for the terminated Trust 2005-EMX4 as a straw-man "mortgagee" in order to wrongfully foreclose on a Note neither entity holds and a Mortgage neither entity owns. Today, various authorities are investigating, sanctioning, and suing Wells Fargo and MERS for precisely the kind of misdeeds that are present in the Mortgagors' case: wrongfully foreclosing using fraudulent legal documentation. (See Exhibit "P," the Consent Judgment; Exhibit "L," the State of Delaware's Complaint against MERS, Exhibit "N," the State of New York's Complaint against MERS, and Exhibit "M," the Commonwealth of Massachusetts' complaint against Wells Fargo.)

24.    Wells Fargo's wrongful conduct is consistent with a pattern of systemic fraud and malfeasance for which it has been investigated on a national scale.  This year, the Office of Inspector General, in a "Memorandum of Review," concluded that in thousands of foreclosure cases, Wells Fargo's affiants "robosigned" foreclosure documents automatically without performing a due diligence review or verification of the facts.  Additionally, Wells Fargo "[filed] improper legal documents."  (See Exhibit "O," the Memorandum of Review by the Office of Inspector General, U.S. Department of Housing and Urban Development.)

25.    Clearly, Wells Fargo's widespread dishonesty and inaccuracy in prosecuting its foreclosures affects the instant case.  In the Mortgagors' case, even the most cursory due-diligence review would reveal that Wells Fargo has no right or interest in the Note or the Mortgage, and has absolutely no standing to foreclose.  Nevertheless, Wells Fargo's threatening foreclosure letters to the Mortgagors---overtures of Wells Fargo's imminent wrongful foreclosure---indicate that no such due diligence review has been performed. In a nutshell, Wells Fargo's conduct in the instant case is consistent with its fraudulent and reckless foreclosure practices nationwide.  (See Exhibit "O," the Memorandum of Review by the Office of Inspector General, U.S. Department of Housing and Urban Development.)

26.    In summary, on July 21, 2005, the Mortgagors signed the Note and the Mortgage to Mortgage Lenders Network.  On November 1, 2005,

Mortgage Lenders Network sold and transferred the Note and the Mortgage to "RASC Series 2005 EMX4 Trust" ("Trust 2005-EMX4"), a mortgage-backed-securities trust, reserving only the servicing rights to Mortgage Lenders Network. On March 24, 2006, Trust 2005-EMX4 was terminated, and all of Mortgage Lenders Network's rights and interests in the Note and the Mortgage terminated along with the Trust. Trust 2005-EMX4 never sold the Note or the Mortgage to any other party. After Trust 2005-EMX4 was terminated, Wells Fargo, without any servicing rights and without privity of contract with the mortgagees, wrongfully sent bills to the Mortgagors, pretending to have authority to collect payments. The Mortgagors have paid many of these wrongful bills. After the Mortgagors ceased paying the wrongful bills, Wells Fargo brought wrongful foreclosure proceedings against the Mortgagors, ostensibly in the name of U.S. Bank "as Trustee" for the terminated Trust 2005-EMX4. Wells Fargo is attempting to reap where it has not sown.

Further affiant sayeth not.

STATE OF ILLINOIS       )
                        ) ss:
COUNTY OF COOK          )


I hereby swear, certify, and declare, under penalty of perjury, under the laws of the state of _____TENNESSEE_____, that the foregoing affidavit is true and correct.


_____

Teri L. Petit


On the _20th_ day of April, in the year 2012, before me, the undersigned notary, personally appeared Teri L. Petit, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the above instrument and to be a credible person and of lawful age and acknowledged to me that she executed the same in her capacity, that by her duly sworn signature on the instrument, the individual executed the instrument, and that such individual made such appearance before the undersigned in the City of Oak Park in the State of Illinois.


_____
Notary Public


My commission expires:

OFFICIAL SEAL
SERGIO D NEYLAND
Notary Public - State of Illinois
My Commission Expires Apr 29, 2013